James SMITH, Plaintiff,

v.

SENTRY INSURANCE, a Mutual Company, Burton G. Boldebuck, Michael G. Hickey, Linda Toole, Ron Heck, Steve Peterson, Bruce Davidson, Larry Ballard, Defendants.

Civ. A. No. C86–1176A.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 18, 1987.

John R. Gaughen, Spearman, Dunham & Gaughen, Atlanta, Ga., for plaintiff.

Charles A. Edwards, Graham & James, Raleigh, N.C., Alfred B. Adams, III, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on defendants' motion for leave to file a motion for summary judgment out of time, request to be granted leave, *nunc pro tunc*, to file a brief in excess of twenty-five pages, motions to dismiss, and motions for summary judgment. These motions will be considered *seriatim*.

### I. LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT.

■ Defendants' proposed motion for summary judgment addresses the merits of plaintiff's age discrimination claim and state tort claim. Complaint, Counts I & III. This motion for summary judgment follows timely summary judgment motions which attack plaintiff's complaint on procedural grounds. Defendants contend that they did not file this second motion for summary judgment before the expiration of discovery because they were awaiting the transcription of depositions of various individual defendants taken by plaintiff toward the end of the discovery period. While it would have been preferable for defendants to seek leave to file the proposed summary judgment motion prior to the conclusion of the discovery period, plaintiff offers no substantive reason for denying the leave which defendants seek now. Entertaining the proposed summary judgment motion may well simplify matters for trial or dispense with the need for a trial. For this reason, defendants' motion for leave to file motion for summary judgment out of time is GRANTED. Plaintiff is given twenty (20) days from receipt of this order to file a reply brief.

■ Defendants filed the proposed motion for summary judgment with the court at the same time they sought leave for the filing of the motion. The proposed brief in support of defendants' motion is thirty-six pages in length. The proposed brief is not padded with quotations from depositions or other unnecessary material, but addresses the complex application of the law to the facts of this case. In view of the fact that the extensive briefing is justified by the circumstances of this case, defendants' request for leave to file a brief in excess of twenty-five pages is GRANTED.

### II. MOTION TO DISMISS.

■ Defendants Burton G. Boldebuck, Ron Heck, Steve Peterson, Bruce Davidson, and Larry Ballard have moved to dismiss plaintiff's complaint pursuant to Rule 4(j) of the *Federal Rules of Civil Procedure*. Plaintiff first attempted to serve these defendants by certified mail, but the court quashed such service as an ineffective manner of serving a non-resident party under Georgia's long-arm statute. *See* Order of September 17, 1986, at 11 (citing Fed.R.Civ.P. 4(e) & O.C.G.A. § 9–10–94). Plaintiff again attempted to serve these defendants by personal process server on February 23, 1987. The return of this pro-

cess server indicates that he left a summons and copy of a complaint for each of these defendants at their place of business in care of defendant Bruce Davidson. *See* Motion to Dismiss, Exhibits A & B. However, the receptionist on duty at defendants' offices has testified that the summonses and complaints were actually delivered to her by the process server who did not request that she forward the summonses and complaints to these defendants. Affidavit of Rebecca Raciborski, March 4, 1987.

Defendants contend that the service upon their receptionist is an ineffective method of service upon non-residents under Georgia law. Fed.R.Civ.P. 4(e). Georgia's long-arm statute authorizes service upon non-residents in the same manner as service upon residents. O.C.G.A. § 9–10–94. Because service upon residents may be effected by leaving the complaint and summons with the resident "personally, or by leaving copies thereof at his dwelling house or usual place of abode," O.C.G.A. § 9–11–4(d)(7), defendants contend that they have not been effectively served. Defendants point out that service of a receptionist or a secretary is not effective service under Georgia law unless that person is an agent authorized to receive service of process on behalf of the party. *See, e.g., Headrick v. Fordham,* 154 Ga.App. 415, 268 S.E.2d 753 (1980). In addition to seeking dismissal of plaintiff's complaint against them, these defendants request that sanctions be levied against plaintiff's counsel whose ill-fated efforts to perfect service of process have allegedly multiplied the proceedings in this case "unreasonably and vexatiously." 28 U.S.C. § 1927.

■ Plaintiff's counsel has responded to the foregoing arguments and allegations by stating that he relied upon the personal process server to serve defendants personally at their place of business. He states that the process server assured him through his legal assistant that defendant Bruce Davidson had agreed to accept service on behalf of the other defendants and that defendant Davidson was served with the summonses and complaints. Response

at 3; see also Aff. of Connie Keenum at 2. Although the return on the summons to defendant Davidson does in fact indicate that he personally received the summons and a copy of the complaint, the defendants have impeached this return as untrue. *Wolfe v. Rhodes,* 166 Ga.App. 845, 487, 305 S.E.2d 606 (1983). Defendants have discharged their heavy burden of proving that the facts of service were other than as stated by the return. *Id.* Therefore, the court concludes that none of these defendants, including defendant Davidson, was personally served with a complaint and summons, but rather received service secondhand through their receptionist who was not authorized to receive service of process on their behalf.

Because this second attempt at service of process upon these defendants was ineffective, plaintiff has failed to perfect service of process within 120 days after the filing of the complaint. Fed.R.Civ.P. 4(j). Indeed, well over 120 days have elapsed since this court quashed plaintiff's first attempted service, thereby giving plaintiff the opportunity to perfect service upon these defendants. *See* Order of September 17, 1986, at 10–12. Under these circumstances, Rule 4(j) provides for dismissal if "the party on whose behalf such service is required cannot show good cause why such service was not made" within the prescribed 120 day period. Thus, plaintiff can only avoid dismissal if he can demonstrate "good cause" for failing to perfect service. In this regard, plaintiff submits as evidence the affidavit testimony of Connie Keenum, a legal assistant to plaintiff's counsel, and Officer Jack Mrozinski, a Portage County, Wisconsin, Sheriff's Deputy. This testimony suggests that plaintiff's counsel had no notice of the defective service. In addition to the inaccurate return, reference is made to a "long-standing agreement" between the Portage County Sheriff's Department and Sentry World Headquarters whereby service may be perfected upon an officer of Sentry by serving the secretary to that particular officer. *See* Keenum Aff. at 3; *see also* Mrozinski Aff. at 2. In view of this evidence, the court concludes that plaintiff's failure to effect proper service

on defendants is due in large part to the process server's negligence; i.e., failure to insure that the person receiving service was so authorized, failure to complete the return accurately, etc. While more diligence on the part of plaintiff's counsel conceivably could have revealed the defects in service prior to expiration of the 120 day period, the court believes reasonable diligence was exercised. For this reason, the court concludes that "good cause" has been demonstrated and thus, defendants' motion to dismiss is DENIED. The court will allow plaintiff *two weeks* from receipt of this order to perfect service of process on defendants.[1] Failure to do so will result in dismissal as to these defendants.

■ Although the failure of plaintiff's counsel to perfect service of process has clearly multiplied proceedings in this action, the court concludes that an award of attorney's fees and expenses pursuant to section 1927 is unwarranted. The reason for service is primarily to provide notice of an action. Clearly, defendants have had notice by both the mailing and the technically-incorrect attempt at personal service. There is no evidence of prejudice to the defendants. The proceedings and costs have been multiplied primarily because of hyper-technical strategies employed by defendants. While the defendants are certainly entitled to stand on the rights protected herein, this court does not believe

that such a quibbling position ought to be encouraged with an award of attorney's fees.

## III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.

Defendant Sentry has moved for summary judgment with respect to Count II. The individual defendants have separately moved for summary judgment with respect to all three counts of plaintiff's complaint. In view of the foregoing ruling on defendants Boldebuck, Heck, Peterson, Davidson and Ballard's motion to dismiss, the court will stay consideration of the motion for summary judgment by these defendants pending plaintiff's perfecting service of process on them within the above-prescribed time period. The court will address the merits of the motion for summary judgment filed by defendant Sentry and the motion for summary judgment filed by defendants Michael Hickey and Linda L. Toole. Because these motions do overlap with respect to Count II, the court will rule upon these motions by addressing defendants' respective arguments regarding each count of plaintiff's complaint. Before turning to the arguments made by defendants, the court will review the facts of record.

### A. *Statement of Facts.*[2]

This court's review of the record reveals that plaintiff began employment with the

1. The court notes that plaintiff has failed to provide evidence to support his contention that he was told by the process server that defendant Davidson agreed to accept service on behalf of the other defendants. *See* Local Rule 220–1. However, because defendants provide no evidence to the contrary, and because such a finding would be consistent with the other events leading to this motion, the court will allow plaintiff to attempt service again on all defendants. If plaintiff intends to rely again on this manner of service, however, he is advised to be prepared to offer evidence that such manner of service was indeed authorized.

2. In passing upon defendants' motions for summary judgment, the court may consider "pleadings, depositions, answers to interrogatories, admissions on file, affidavits, oral testimony, matters subject to judicial notice, stipulations and concessions, and other materials admissible in evidence or otherwise usable at trial." *Clay v. Equifax, Inc.*, 762 F.2d 952, 956 (11th Cir.1985)

(citing 6 *Moore's Federal Practice* § 56.15[7]). This court has accordingly considered the pleadings of record and the depositions of plaintiff James Smith, defendant Michael Hickey and Mr. John R. Enright, along with the exhibits properly admitted at these depositions. The parties have attached other exhibits to their moving papers and briefs pertaining to motions for summary judgment. For example, plaintiff has attached a photocopy of the EEOC intake interview notes and of the EEOC intake questionnaire to his reply to defendants' motions for summary judgment.

As a general rule, exhibits loosely appended to moving papers should not be considered by a district court when ruling upon summary judgment. Exhibits and other similar papers should be identified by affidavit or otherwise made admissible in accordance with the *Federal Rules of Evidence.* *See* 6 *Moore's Federal Practice* ¶ 56.11[1.–8]. Consequently, business records should be appended to affidavits satisfying the

defendant Sentry as the Atlanta Claims Center Property Claims Superintendent in the spring of 1981. Plaintiff has alleged that he was a victim of age discrimination when he applied for the position as Atlanta Claims Service Center Manager in July of 1985. Plaintiff contends that the hiring of defendant Hickey was motivated by discrimination against plaintiff on the basis of plaintiff's age.

After being informed that he was not to be chosen as Claims Manager, plaintiff sent a memorandum to the executive officers of defendant Sentry on July 26, 1985. *See* Deposition of James Smith (June 23, 1986), Exhibit 4. Plaintiff reported in this memorandum state and federal law illegalities and irregularities in claims adjustment by defendant Sentry which he contends he had been reporting to his immediate superiors all along. More importantly, plaintiff alleged that the selection of defendant Hickey for the position of Claims Manager was the result of discrimination against him on the basis of age and against others on the basis of sex. *See id.* A meeting ensued between plaintiff Smith and his superiors on August 2, 1985 at which the superiors requested evidence of the adjusting irregularities, namely lists of the claims at issue. The topic of sex and age discrimination was also discussed.

Plaintiff conditioned the turning over of the evidence requested upon a good faith showing by defendant Sentry that it intended to clean up its act. When plaintiff was suspended on August 30, 1985 with pay pending investigation into his very serious allegations, plaintiff apparently concluded that defendant Sentry was not acting in good faith. Plaintiff contends that his allegations, particularly those regarding age discrimination, caused defendants to seek an excuse for terminating him. In particular, plaintiff has testified that during the investigation into his allegations he was subjected to a campaign to discredit his reputation as an effective and efficient ad-

juster and administrator. He has named defendants Hickey and Toole as participants in this campaign. Defendant Toole, a worker under plaintiff's direction, is said to have assisted by reporting upon plaintiff.

Whatever the truth of plaintiff's allegations, plaintiff has admitted that he never gave defendants a list of the claims involving questionable insurance practices. Plaintiff was terminated as an employee of defendant Sentry on September 20, 1985. He was fired "for refusing to cooperate in an investigation and [for] poor job performance." Smith Depo., Exhibit 2.

Plaintiff filed a charge of discrimination with the EEOC on September 27, 1985. The notes of plaintiff's interview with the intake interviewer indicate that plaintiff discussed primarily his contentions that he was discriminated against on the basis of age, that he was passed over for the promotion to Claims Manager and then he was terminated. Plaintiff's Reply to Defendants' Motion for Summary Judgment (October 30, 1986), Exhibit A. Plaintiff told the interviewer that defendant Sentry had shown "a pattern of demoting and/or terminating older workers and hiring younger workers." *Id.* Plaintiff filled out an Intake Questionnaire which reveals that the discriminatory action taken against him was the result of: "(1) retaliatory appraisal," "(2) discrimination promotion" and "[3] discriminatory/retaliatory termination and possibly other actions." *Id.*, Exhibit B. Plaintiff explained that this action was taken against him by his employer and others unnamed because of his age and for other reasons which he did not explain. *Id.* This interview and questionnaire resulted in an EEOC Notice of Charge of Discrimination (EEOC charge) which specified only age as a cause of discrimination. Smith Depo., Exhibit 2. The facts supporting this charge were detailed by the intake interviewer in a statement signed by plaintiff which did not mention retaliation:

requirements of Rules 803(6) and 901 of the *Federal Rules of Evidence.* Public records, though not subject to hearsay problems, should also be properly authenticated. Fed.R.Evid. 803(8); Fed.R.Evid. 902(4). Although the intake

interview notes and intake questionnaire submitted by plaintiff is not properly authenticated, the court will consider it when passing upon defendants' motions for summary judgment because defendants have not objected.

I. On Friday, September 20, 1985, I was terminated from my position of Property Unit Manager. I was employed about 4½ years.

II. On September 20, 1985, I was advised by Mike Hickey, Claims Manager and Jack Enright, Director of Personnel, that I was being fired for refusing to cooperate in an investigation and poor job performance.

III. I believe that I have been discriminated against because of my Age (48), for the following reasons:

A. In July 1985 I was denied a promotion to the position of Claims Manager. A younger employer, Mike Hickey was selected for the position. Of still greater importance, the Respondent refused to interview me for the position.

B. Within the past year the Respondent has shown a pattern of demoting and/or terminating older workers and hiring younger workers.

C. Prior to my termination I never received any warnings from the Respondent about my job performance.

*Id.*

After receiving his right to sue letter, plaintiff commenced this action on May 27, 1986. Plaintiff has alleged that he was discriminated against on the basis of age when he applied for the position of Claims Manager and when he was terminated. He alleges an elaborate campaign to discredit him after he complained about age and sex discrimination by defendant Sentry. Plaintiff has alleged that these actions constitute a violation of the Age Discrimination in Employment Act (ADEA). Complaint, Count I. He has alleged that these actions, especially the alleged discrimination in response to his complaints, also violated his rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1981 and constituted a conspiracy to injure him by causing his discharge and intentionally causing plaintiff "humiliation, embarrassment, degradation, mental anguish and loss of professional reputation." *Id.*, Counts II & III.

By order of September 17, 1986, this court held that plaintiff's allegations of violation of the first and fourteenth amendments as well as section 1981 did not state a claim upon which relief could be granted. By order of December 30, 1986, this court ruled that plaintiffs' allegations of conspiracy did not state a claim, but that plaintiff had stated a claim in Count III for intentional infliction of emotional distress.

As a consequence of these orders, the following claims remain to be addressed by these motions for summary judgment and the proposed motion for summary judgment which will be ruled upon later. First, plaintiff claims that he is the victim of age discrimination. Complaint, Count I. Although plaintiff's second count is inartfully worded, it is an attempt to allege retaliatory discharge. Complaint, Count II. Finally, plaintiff claims that defendants intentionally inflicted emotional distress upon him. Complaint, Count III.

B. *Conclusions of Law.*

The court will address defendants' arguments in favor of summary judgment with respect to each count of plaintiff's complaint. Summary judgment with respect to a particular count or defendant is appropriate only if the undisputed, material facts of record indicate that the defendant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

### COUNT I.

The only remaining defendants challenging Count I at this time are defendants Hickey and Toole. Defendant Hickey contends that he should be entitled to summary judgment with respect to Count I because he was not one of plaintiff's superiors at the time the Claims Manager position became vacant and thus could not have discriminated against plaintiff when plaintiff was denied this position and defendant Hickey was chosen for this position. Defendant Toole contends that she is entitled to judgment with respect to Count I because she was not named in plaintiff's charge of discrimination as a party who discriminated against plaintiff.

■ With respect to defendant Hickey's arguments, the court agrees that the undisputed, material facts of record indicate that defendant Hickey was not acting as an agent for defendant Sentry at the time plaintiff was denied the position of Claims Manager. Consequently, defendant Hickey may not be a party to a claim of age discrimination arising from this promotion decision. 29 U.S.C. § 623(a); 29 U.S.C. § 630(b). However, this does not mean that defendant Hickey is not a proper party to the age discrimination claim contained in Count I. Without reaching the merits of his claim which the court will have to reach upon considering defendants' proposed motion for summary judgment, the court notes that defendant Hickey could have been an agent for defendant Sentry for the purpose of terminating plaintiff. Indeed, this is what plaintiff alleged in his EEOC charge. *See* Smith Depo., Exhibit 2. If defendant Hickey was an agent of defendant Sentry for this purpose, then he is properly named as an individual defendant to the age discrimination claim. As this court has already noted:

> An "employer" is defined as "a person engaged in an industry affecting commerce who has twenty or more employees ... and any agent of such person...." 29 U.S.C. § 630(b); 29 U.S.C. § 623(a); *see McCroan v. Bailey,* 543 F.Supp. 1201, 1210–11 (S.D.Ga.1982). Thus, officials of an employer are not treated differently from the employer itself for the purposes of an age discrimination claim. *Accord, Wasichuk v. Harvey's Wagon Wheel, Inc.,* 610 F.Supp. 206, 208 (D.Nev.1985).

Order of September 17, 1986, at 8. Consequently, defendant Hickey is entitled only to partial summary judgment absolving him of any role in the decision to deny plaintiff the Claims Manager position.

■ Turning to defendant Toole's arguments with respect to Count I, the court notes that as a general rule defendants not named as respondents in an EEOC charge are entitled to summary judgment on claims which were the subject of the EEOC charge. *Bell v. Crackin Good Bakers, Inc.,* 777 F.2d 1497, 1504 (11th Cir.1985). However, this court has modified this rule somewhat by holding that dismissal for failure to name a defendant as a respondent to an EEOC charge is unjustified in the absence of a determination whether the defendant had responsibilities as to the employment practices at issue, had actual notice of the EEOC charge and had an opportunity to be involved in the conciliation process. *Dague v. Riverdale Athletic Association,* 99 F.R.D. 325, 327 (N.D.Ga. 1983); *accord Wazelchuck,* 610 F.Supp. at 209. Even if the court measures plaintiff's EEOC charge by this standard, it is clear that defendant Toole is entitled to summary judgment on Count I. As the court has noted, defendant Toole was not a supervisor or a person with responsibilities over plaintiff's employment or the employment of others. Rather, defendant Toole was one of a number of Sentry employees who answered to defendant in the Property Claims Division of the Atlanta Claims Center. The undisputed, material facts of record dictate the conclusion that defendant Toole could not have even had the type of responsibilities as to the employment practices at issue necessary to make her an agent of defendant Sentry who would have even been involved in the conciliation process. For these reasons, defendant Toole is entitled to summary judgment with respect to Count I.

## COUNT II.

As the court has already noted, plaintiff's inartful pleading in Count II appears to be an attempt to state a retaliatory discharge claim. Such a claim is cognizable as a violation of the ADEA to the extent that plaintiff contends he was fired because he complained about age discrimination as well as a violation of Title VII of the Civil Rights Act of 1964 to the extent that plaintiff complains that he was terminated for complaining about sex discrimination. 29 U.S.C. § 623(d); 42 U.S.C. § 2000e–3.[3] No matter which Act plaintiff

---

3. Indeed, a liberal reading of the factual allegations of plaintiff's complaint which describe a

contends was violated, the gravamen of the violation is discrimination against an employee because the employee has opposed a practice made unlawful by that Act. *Id.* Plaintiff contends that his opposition in the form of his memorandum of July 26, 1985 amounted to opposition against sex and age discrimination which caused his termination.[4]

▮ Defendants contend that plaintiff has not exhausted his administrative remedies which are a prerequisite to a suit for retaliatory discharge. *See* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e). While plaintiff did file the required EEOC charge,, defendants insist that allegations of retaliatory discharge are beyond the scope of the EEOC charge and thus beyond the permissible scope of the judicial complaint.

The starting point for determining the permissible scope of a complaint of employment discrimination is the EEOC charge and resulting investigation. *Evans v. U.S. Pipe & Foundry Company,* 696 F.2d 925, 929 (11th Cir.1983). Focusing upon the EEOC investigation is particularly important because the investigatory function of the EEOC lies at the heart of a statutory scheme for remedying discrimination made illegal by the ADEA and Title VII. This scheme contemplates attempted resolution of charges of discrimination by informal means prior to the institution of costly litigation. As this circuit has noted regarding the role of the EEOC charge and investigation,

> A charge of discrimination is *not* filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and

conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action.

*Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970).

Given this role of the EEOC, this court considers the actual investigation triggered by the EEOC charge to be the primary factor determining the permissible scope of a judicial complaint of employment discrimination. If the EEOC actually investigates an instance of alleged discrimination, then it has the opportunity to effect voluntary compliance with the law prior to the institution of a civil action. This circuit has recognized the value of asking whether the EEOC investigation actually concerned itself with particular instances of alleged discrimination. *See, e.g., Turner v. Orr,* 804 F.2d 1223, 1226 (11th Cir.1986); *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985). In short, a judicial complaint of employment discrimination may include any allegations of discrimination encompassed by an EEOC investigation, even if the EEOC investigation was arguably broader than the EEOC charge triggering the investigation.

Of course, there may well be occasions when the EEOC investigators fail to make inquiries regarding an allegation of discrimination in an EEOC charge. If the EEOC fails for one reason or another to fulfill its statutory obligations, then an employee will not be barred from filing a judicial complaint addressing the same charges of discrimination. *See Healen v.*

---

pattern of retaliation because of plaintiff's complaints about age discrimination would lead to the conclusion that plaintiff was attempting to state a retaliatory discharge claim in Count I of his complaint. For the sake of avoiding confusion when confusion is already rampant, the court has simply addressed all retaliatory discharge issues in the context of Count II of plaintiff's complaint.

**4.** The court has considered whether plaintiff's allegations might be an attempt to state a claim for wrongful discharge based upon retaliation

for having accused defendant Sentry of violating various insurance laws. However, as this court has already noted, a state law claim for wrongful discharge is not available to plaintiff because of the terminable at will rule in Georgia. *See* Order of December 30, 1986, at 2. This rule has no public policy exceptions such that plaintiff could recover for a discharge in retaliation for uncovering illegal activities about the employer. *Goodroe v. Georgia Power Company,* 148 Ga.App. 193, 194, 251 S.E.2d 51 (1978).

*Eastern Airlines, Inc.,* 9 E.P.D. ¶ 10,022 (N.D.Ga.1973) [Available on WESTLAW, 1973 WL 358]. On such occasions the court will ask whether the allegations of discrimination in the judicial complaint were stated substantially in the EEOC charge. In undertaking this inquiry, the court is required to examine the facts alleged in the EEOC charge in addition to any characterization the employee gives to such facts. *Sanchez,* 431 F.2d at 462. If the facts describe the discrimination about which the employee complains in court, then it matters not that the employee inaccurately or incorrectly characterized the discrimination. For example, the employee "may have precise knowledge of the facts concerning the 'unfair thing' done to him, yet not be fully aware of the employer's *motivation* for perpetrating the unfair thing." *Id.*

Of course, if the judicial complaint is a verbatim statement or a paraphrase of the EEOC charge, then it may be said to be substantively the same claim of discrimination. However, the court will not require "that the specific words of the charge of discrimination ... presage with literal exactitude the judicial proceedings which may follow." *Id.* at 465. Instead, the judicial complaint may include any allegations of discrimination which should have been encompassed in a reasonable investigation growing out of the EEOC charge. *Griffin,* 755 F.2d at 1522. "In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez,* 431 F.2d at 466; *see also Turner,* 804 F.2d at 1226.

The foregoing approach to the permissible scope of a judicial complaint gives effect to the actual EEOC investigation no matter how broad the EEOC charge, and thus fosters attention to the statutory scheme of informal conciliation. At the same time, effect is given to the substance of the EEOC charge even if the EEOC fails in its administrative duties.

 Turning to the instant action, the court notes that there is no evidence of the actual EEOC investigation in the record. Consequently, this court is forced in this case to refer to the substance of the EEOC charge. *See Fowler v. Taco Viva, Inc.,* 646 F.Supp. 152, 157 (S.D.Fla.1986). Defendants quite correctly point out that plaintiff's termination is not described in the EEOC charge in terms of retaliatory discharge. However, the court concludes that the question of retaliatory discharge should have been encompassed in a reasonable investigation of plaintiff's EEOC charge. The EEOC charge clearly alleges plaintiff's termination as an unfair act perpetrated by defendants who had already allegedly denied plaintiff a particular promotion on the basis of his age. Plaintiff stated in his EEOC charge that he had no warning that a termination was imminent given his job performance. An investigation of why plaintiff was terminated could reasonably have been expected to grow out of these allegations contained in the EEOC charge. In particular, a reasonable investigation of these charges should have encompassed the possibility that plaintiff was terminated because he opposed the alleged age discrimination in the promotion decision and other allegedly discriminatory practices of defendant Sentry. This conclusion is bolstered by plaintiff's description of "retaliatory termination" on his EEOC intake questionnaire upon which the EEOC charge was based. For these reasons, the court concludes that plaintiff's claim of retaliatory discharge in Count II was encompassed by his EEOC charge and in the investigation reasonably growing out of that charge.

Defendants are accordingly entitled only to partial summary judgment with respect to Count II. That is, defendants Sentry and Hickey are properly charged in plaintiff's complaint with retaliatory discharge. For the same reasons given when discussing Count I, defendant Toole is entitled to summary judgment with respect to Count II because she was not named in the EEOC charge.

## COUNT III.

 Plaintiff alleges in Count III of his complaint that defendants' conduct in dis-

crediting him prior to his termination were an intentional infliction of humiliation and embarrassment upon him. This court has read these allegations as stating a claim for intentional infliction of emotional distress. *See* Order of December 30, 1986, at 3. The remaining defendants have now moved for summary judgment on the grounds that this court should decline to exercise pendent jurisdiction over this state claim. Pendent jurisdiction exists only if the federal claim in a case is of substance sufficient to confer subject matter jurisdiction and the state and federal claims derive from "a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). If "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Id.* As defendants recognize, that article III power over "cases" arising under federal law need not be exercised in every case. *Id.* at 726, 86 S.Ct. at 1139. Pendent jurisdiction must be exercised in light of "considerations of judicial economy, convenience and fairness to litigants." *Id.* Moreover, the court must consider the likelihood of jury confusion that results when the jury treats divergent theories of relief. *Id.* at 727, 86 S.Ct. at 1139.

The federal claims against defendants Sentry and Hickey are substantial enough to confer subject matter jurisdiction. In view of the fact that the alleged campaign to discredit the plaintiff which is said to constitute an intentional infliction of emotional distress is also the campaign which he contends served as the pretext for terminating him on the basis of his age and in retaliation to his opposition to age and sex discrimination, the state and federal claims in this action derive from a "common nucleus of operative fact."

However, the court will decline to exercise pendent jurisdiction because the exercise of such jurisdiction would unfairly interject new issues into this action. In particular, the evidence necessary to prove the necessary motivation for the alleged intent to inflict emotional distress would include evidence of plaintiff's vigorous opposition to alleged violations of state insurance laws. These new issues would likely confuse a jury which would have to be instructed to disregard all such evidence when passing upon the federal retaliatory discharge claims. For these reasons, the court concludes that a trial exploring all of the motivations for an intentional infliction of emotional distress would be judicially uneconomical, unfair to the litigants, and engender the likelihood of jury confusion. *Accord Lettich v. Kenway*, 590 F.Supp. 1225, 1226 (D.Mass.1984).

For the foregoing reasons, the court concludes that defendants are entitled to summary judgment with respect to count III.

## IV. CONCLUSION.

In sum, defendants' motion for leave to file a motion for summary judgment out of time is GRANTED. The Clerk of Court is DIRECTED to file defendants' proposed second motion for summary judgment and accompanying depositions. Plaintiff is given twenty (20) days from receipt of this order to file a reply brief. Defendants' request for leave to file a brief in excess of twenty-five pages is GRANTED. Defendant's motion to dismiss is DENIED. Fed. R.Civ.P. 4(j). The motion for summary judgment filed by these defendants is accordingly STAYED. The motions for summary judgment filed by defendant Sentry, Hickey and Toole are GRANTED IN PART and DENIED IN PART. Plaintiff's complaint against defendant Toole is DISMISSED.